IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| UNITED STATES OF AMERICA, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-685 |
| | § | C.A. No. C-06-570 |
| JOSE MARTIN SANDOVAL-ESPINO, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Jose Martin Sandoval-Espino's ("Sandoval") motion to vacate his sentence under 28 U.S.C. § 2255. (D.E. 37.)[1] Also before the Court is the government's answer and motion to dismiss Sandoval's motion as time-barred. (D.E. 43-45.) Sandoval has filed a reply (D.E. 46), which the Court has also considered. Additionally, Sandoval has also filed a second motion pursuant to 28 U.S.C. § 2255, which was assigned a separate civil number by the Clerk, No. 2:07-cv-99). (D.E. 42.) That motion, to the extent it contains new claims not in Sandoval's first § 2255 motion, is being addressed by separate order.

For the reasons set forth herein, the Court concludes that the government's motion to dismiss Sandoval's motion as time-barred should be DENIED. The Court nonetheless DENIES Sandoval's § 2255 motion because he has not shown he is entitled to relief. The Court also DENIES him a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Docket entries refer to the criminal case, Cr. No. C-04-685.

1

## II. FACTS AND PROCEEDINGS

**A.     Summary of the Offense**[2]

On November 10, 2004, Sandoval drove a 1999 Dodge Caravan registered to Jose Antonio DeLaGarza into the U.S. Border Patrol Checkpoint in Falfurrias, Texas. Sandoval had two passengers in the vehicle, his wife Marisela Sandoval ("Marisela") and their eight-year old son. During the immigration interview, Sandoval stated that they were en route to the Mexican Consulate Office in Houston, Texas, and the agent noticed that Sandoval focused on the drug service canine. The canine alerted to the vehicle and Sandoval consented to a further search. Once in the secondary inspection area, the canine alerted to the vehicle's dashboard. Further inspection revealed that the screws on the air ducts underneath the dashboard had been recently removed and the screws which held the heater core were missing. After removing the heater core, the agent located two bundles of cocaine (90% purity) with a net weight of 2,020 grams.

Sandoval denied knowledge of the cocaine and stated that he picked up his wife and child at home prior to leaving for Houston. Marisela also denied knowledge of the drugs, but stated that her husband picked her and her child up at a gas station prior to leaving for Houston. When questioned about this discrepancy, Sandoval refused to answer any further questions.

A DEA agent arrived and took custody of the case. Marisela was interviewed and advised that she dropped off Sandoval at the residence of Jose Antonio DeLaGarza in McAllen, Texas, and that she returned home to pack for their trip to Houston. She stated that Sandoval picked her and her child up at home and that they were en route to the Mexican Consulate Office in Houston. She denied knowledge of the cocaine and stated that she had not been to Houston in over five years.

Sandoval was interviewed and stated that he picked up the van at the residence of Jose Antonio DeLaGarza in McAllen, Texas and that they were en route to the Mexican Consulate in Houston. Sandoval

---

[2] The information in this section is derived from Paragraphs 4 through 7 of Sandoval's Presentence Investigation Report.

stated that he and his wife last traveled to Houston approximately one year ago. When the agent confronted Sandoval with a hotel receipt, dated October 30, 2004, with his name on it, Sandoval changed his statement. He advised that he was going to be paid $400.00 by an unknown individual to transport money from Houston to the Rio Grande Valley. Sandoval stated that he had conducted one prior trip for this unknown individual approximately one week ago, and that his wife accompanied him on that trip.

When contacted by phone, DeLaGarza stated that he sold the 1999 Dodge Caravan to an unknown individual approximately 15 days ago for $4,500.00.

## B. Criminal Proceedings

On December 8, 2004, Sandoval and Marisela were both charged in a single-count indictment with knowingly and intentionally possessing with intent to distribute more than five hundred (500) grams of cocaine, to-wit: approximately two thousand and twenty (2,020) grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. (D.E. 15.) Sandoval pleaded guilty pursuant to a written plea agreement that contained a waiver of his right to appeal and a waiver of his right to file a motion pursuant to 28 U.S.C. § 2255. (D.E. 26, 27.)

On June 1, 2005, the Court sentenced Sandoval to 46 months in the custody of the Bureau of Prisons, to be followed by a four-year supervised release term. (D.E. 35.) The Court also imposed a $100 special assessment. (D.E. 35.) Judgment was entered on June 6, 2005. (D.E. 35.)

Consistent with his waiver of appellate rights, Sandoval did not appeal. Instead, he filed the instant § 2255 motion on June 20, 2007.[3]

---

[3] The Clerk received Sandoval's motion on June 26, 2006. The motion indicates that it was signed, however, on June 20, 2006. (D.E. 37 at 7.) That is the earliest date it could have been delivered to prison authorities for filing, and it is thus deemed filed as of that date. See Houston v. Lack, 487 U.S. 266, 276 (1988) (a document is deemed filed by a *pro se* prisoner when it is delivered to prison authorities for mailing, postage pre-paid); United States v. Young, 966 F.2d 164, 165 (5th Cir. 1992) (providing benefit of Houston v. Lack to *pro se* prisoner in § 2255 proceedings); Rule 3(d), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS (§ 2255 motion is deemed timely if inmate deposits it in the institution's internal mailing system on or before the last day for filing).

### III. MOVANT'S ALLEGATIONS

Sandoval asserts two grounds for relief in his § 2255 motion. First, he argues that he was denied the effective assistance of counsel because his counsel failed to move to suppress the seizure of the cocaine based on a lack of probable cause. (D.E. 37 at 6, Supp. Mem. at 3-6.) Second, he claims that his constitutional rights under the presentment and due process clause of the Fifth Amendment and his Sixth Amendment right to a jury were violated by his sentencing, relying on the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005) and its predecessors, Blakely v. Washington, 542 U.S. 296 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000). He contends that he is entitled to resentencing . (D.E. 37 at 6; Supp. Mem. at 7-9.) In a related claim, he argues that his counsel was ineffective for failing to raise arguments under Booker, both before and after sentencing and on appeal. (D.E. 37, Supp. Mem. at 9-10.)[4]

In its response and motion to dismiss, the government moves for dismissal on the grounds that Sandoval's motion is untimely and barred by his waiver of § 2255 rights. (D.E. 44 at 2.) It also argues that his claims are subject to dismissal on their merits. (D.E. 44 at 11-15.)

In his brief reply, Sandoval addresses few of the government's arguments. Indeed, he does not respond at all to the government's claims regarding the timeliness of his motion or his waiver of § 2255 rights. Instead, he essentially adds the claim that his counsel was ineffective for failing to challenge the amount of drugs attributed to him (the 2020 grams) and for failing to request that the drugs be re-weighed to determine if the amount was actually less than 2000 grams. (D.E. 45 at 1-2.)

---

[4] Sandoval also devotes a large portion of his memorandum to arguing that Booker applies retroactively. (See D.E. 37 at 10-20.) Because Sandoval was sentenced and judgment was imposed after Booker was decided, it is irrelevant whether Booker applies retroactively on collateral review. Put differently, it is undisputed that Booker was applicable at the time of Sandoval's sentencing. Moreover, Sandoval was sentenced by this Court under the post-Booker advisory guideline regime. See infra at Section IV.C.2; see also D.E. 41, Sentencing Transcript at 6 (Court making clear that it considered the guideline range as advisory only).

## IV.  ANALYSIS

A.	**Timeliness of 28 U.S.C. § 2255 Motion**

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final. 28 U.S.C. § 2255(1).  The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired.  Clay v. United States, 537 U.S. 522, 532 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000) (*per curiam*).

As previously noted, Sandoval did not appeal.  Thus, his conviction became final when the time for filing an appeal expired.  Judgment in this case was entered on June 6, 2005. (D.E. 35.)  A defendant must file a notice of appeal from a criminal judgment not later than ten days after entry of judgment.  Fed. R. App. P.  4(b).  As calculated under Fed. R. App. P. 26, that ten-day period excludes intermediate Saturdays, Sundays and legal holidays.  So calculated, ten days after June 6, 2005 was June 20, 2005.  Sandoval's conviction therefore became final on June 20, 2005, contrary to the government's assertions.[5]

He had one year from that date, or until June 20, 2006, to file a § 2255 motion.  Although the government contends that Sandoval's motion was filed on June 23, 2006 (presumably relying on the postmark on his envelope), a document filed by a pro se prisoner is deemed filed at the time he delivers it to prison officials for mailing.  See supra note 3.  Although Sandoval's motion does not indicate when it was given to prison officials, it is signed and dated June 20, 2006.  That is the earliest date it could have been given to prison officials and the Court deems it filed as of that date.  Accordingly, Sandoval's motion is

---

[5] In its response, the government states that it is "beyond cavil that Sandoval's conviction became final on June 16, 2005." (D.E. 44 at 5.)  That would be accurate if one calculated the ten-day period to include Saturdays and Sundays.  Effective December 1, 2002, however, Rule 26(a), Fed. R. App. P., was amended to require that a litigant should "exclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days, unless stated in calendar days."  See 2002 Adv. Comm. Notes, Fed. R. App. P. 26.  Following those instructions and the plain language of Rule 26, Sandoval's conviction became final on June 20, 2005.

timely, and the government's motion to dismiss his motion as time-barred is DENIED.

**B.     Sandoval's Waiver of § 2255 Rights**

The government also claims that Sandoval validly waived his right to file any § 2255 motion. It is true that the written plea agreement contained a waiver of § 2255 rights, which was in the same paragraph as his waiver of appellate rights. (D.E. 27 at ¶ 7.) While the transcript of the rearraignment certainly supports the conclusion that Sandoval's plea and his waiver were knowing and voluntary, he was not specifically questioned by the Court about his § 2255 wavier, but only about his waiver of appellate rights. (See, e.g., D.E.40, Rearraignment Transcript ("R. Tr.") at 6.) Cf. Fed. R. Crim. P. 11(b)(1)(N) (requiring the Court to "inform the defendant of, and determine that the defendant understands, ... the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.").

In light of the fact that there was a lack of technical compliance with Rule 11(e)(1)(N) in this case as to Sandoval's waiver of § 2255 rights, the Court will address his claims on their merits, rather than dismissing them on the basis of the waiver.[6]

**C.     Merits of Sandoval's Claims**

    **1.     Ineffective Assistance of Counsel Claims**

        **a.     General Standards**

Sandoval's ineffective assistance of counsel claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v.

---

[6] The Court makes no ruling herein on the enforceability of Sandoval's § 2255 waiver.

Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### b. Counsel's Failure to File A Motion to Suppress

In his first argument, Sandoval argues that his counsel should have filed a motion to suppress the cocaine found in his vehicle because the search was illegal. There is no merit in Sandoval's contention. As correctly noted by the government, Sandoval's vehicle was searched at a U.S. Border Patrol checkpoint after a drug canine alerted to his vehicle. The search was valid and there was no basis for challenging it. See United States v. Flores-Montano, 541 U.S. 149, 152-54 (2004) (search of a gas tank at border patrol checkpoint constitutional, even without reasonable suspicion); id. at 152 (citing United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985) for the proposition that, when dealing with border searches, "routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant"). Thus, it did not constitute ineffective assistance of counsel for his attorney not to file a motion to suppress. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). This claim fails.

### c. Counsel's Failure to Challenge the Amount of Drugs Attributed to Sandoval

In his reply, Sandoval argues that he was denied effective assistance of counsel because his attorney failed to challenge the amount of drugs attributed to him. In order for Sandoval to show that he suffered prejudice as a result of counsel's ineffectiveness at sentencing, he must show that there is a reasonable

7

probability that, but for counsel's alleged errors, the sentencing would have been different. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000). This requires him to show a reasonable probability that he would have received a lesser sentence. United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004). As discussed herein, there is no evidence to support any contention that, had his counsel challenged the amount of drugs Sandoval was charged with, Sandoval would have received a lesser sentence.

In particular, Sandoval admitted at the rearraignment that he possessed six pounds (gross weight) of cocaine, the equivalent of 2721.55 grams. (R. Tr. at 30-32.) The net weight, as found by the Court at sentencing, was 2020 grams. There is nothing in the record to indicate that a re-weighing of the cocaine would have resulted in any lesser amount, nor has Sandoval presented any evidence to show that the actual amount was less than 2000 grams. Accordingly, even if his counsel had raised such an argument, there is not a "reasonable probability" that Sandoval would have received a lesser sentence. Phillips, 210 F.3d at 350; Grammas, 376 F.3d at 438-39. Thus, Sandoval's claim fails.

2.  **Sandoval's Claim Pursuant to Booker**

Sandoval also argues that his sentence was unconstitutionally imposed in violation of his Fifth and Sixth Amendment rights, pursuant to United States v. Booker, 543 U.S. 220 (2005) because this Court allegedly found facts that increased his sentence, rather than submitting them to a jury. Although both Sandoval and the government argue about whether Booker applies retroactively on collateral review, that issue is not before the Court. Sandoval was sentenced *after* Booker was decided, and was not sentenced under the mandatory sentencing guideline scheme ruled to be unconstitutional in Booker. Thus, Booker applies to his sentencing.

There was no Booker violation in this case, however. Not only was Sandoval sentenced under an advisory guideline scheme (see S. Tr. at 6), but he admitted the offense conduct at the plea. (R. Tr. at 30-32.) Booker explicitly allow a sentence to be increased based on facts not tried to a jury, if they are admitted

8

by the defendant. 543 U.S. at 244. As noted, Sandoval admitted at his rearraignment that the gross weight of the cocaine exceeded 2721 grams. He also pleaded guilty to an indictment specifically charging him with possessing 2020 grams of cocaine. Moreover, Sandoval told the Court at sentencing that he had reviewed the PSR and he did not contradict his attorney's statement to the Court that there was no objections to the PSR. (S. Tr. at 2). Thus, his sentence was not impermissibly enhanced in violation of his Sixth Amendment rights. Accordingly, no violation of Booker occurred.[7]

Additionally, because there was no Booker violation, there was no basis for his counsel to raise a Booker objection at sentencing or on appeal. Thus, Sandoval's claim that his counsel was constitutionally ineffective for failing to challenge his sentence based on Booker likewise fails. See Kimler, 167 F.3d at 893.

For all the foregoing reasons, Sandoval's claims fail and his § 2255 motion is DENIED.

## D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Sandoval has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be

---

[7] Moreover, this claim is subject to dismissal because it is procedurally barred. That is, Sandoval failed to appeal and failed to raise the claim on appeal, which bars this Court from considering his claim. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the petitioner can demonstrate either (1) cause for his default and actual prejudice or (2) that he is actually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999). Sandoval makes no argument that he is actually innocent, nor has he shown cause and prejudice for his failure to raise the issue on appeal. Thus, his claim is not properly before the Court.

repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could not debate the denial of Sandoval's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Similarly, as to the claims that this Court has addressed on procedural grounds, the Court finds that Sandoval cannot establish at least one of the Slack criteria. Specifically, jurists of reasons would not find this Court's procedural rulings debatable. Accordingly, Sandoval is not entitled to a COA as to his claims.

## V. CONCLUSION

For the foregoing reasons, the government's motion to dismiss (D.E. 44) is DENIED IN PART and GRANTED IN PART. It is DENIED insofar as it seeks dismissal of Sandoval's motion on the grounds that it is time-barred. It is GRANTED as to the argument that Sandoval's claims fail on their merits. Sandoval's motion to vacate pursuant to 28 U.S.C. § 2255 (D.E. 37) is thus DENIED. Additionally, Sandoval is DENIED a Certificate of Appealability.

It is so ORDERED.

Signed this 29th day of May, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE